Texanita COLE, Plaintiff–
Appellant/Cross–
Appellee,

v.

RUIDOSO MUNICIPAL SCHOOLS, Ruidoso Board of Education, Sid Miller, individually and in his official capacity; W.R. Edwards, also known as Stormy Edwards, Board President, individually and in his official capacity; Don Swalander, Board Member, individually and in his official capacity; Rod Adamson, Board Member, individually and in his official capacity; Mike Morris, Board Member, individually and in his official capacity; Fred Lynn Willard, Board Member, individually and in his official capacity, Defendants–Appellees/Cross–Appellants.

Nos. 92–2194, 92–2216.

United States Court of Appeals,
Tenth Circuit.

Dec. 29, 1994.

Susan G. Morrison, Austin, TX, for plaintiff-appellant/cross-appellee.

Daniel H. Friedman, Santa Fe, NM, for defendants-appellees/cross-appellants.

Before BRORBY, HOLLOWAY, and KELLY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Texanita Cole appeals from a grant of summary judgment in favor of Ruidoso Municipal Schools (School District or District) on claims arising from the termination of her employment as the principal of the Ruidoso Middle School (RMS). Cole also appeals the denial of her motion to disqualify defense counsel. We hold that the district court properly granted summary judgment for the School District on Cole's Equal Pay Act claim and her Title VII retaliation claim, but conclude that summary judgment for the District was not appropriate for Cole's Title VII claim of gender discrimination. We affirm the district court's denial of Cole's motion to disqualify defense counsel.

The School District and the individual defendants, who were dismissed from the case on a previous motion for summary judgment, appeal the district court's imposition of certain costs on them as a condition of granting a stay of discovery. We conclude that we have jurisdiction over this cross-appeal of the defendants and affirm the district court's imposition of costs.

## I

When reviewing a motion for summary judgment, we view the facts in the light most favorable to the non-moving party. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10 Cir.1991). Our record reveals the following facts:

Texanita Cole had been a certified teacher for the Ruidoso School District for approximately fourteen years when, in 1982, she became the District's first female administrator, the principal of RMS. She succeeded defendant Sid Miller who had been promoted to associate superintendent of the District. Under both principal Miller and principal Cole, there was a high degree of dissension among the faculty at RMS, allegedly due to difficult personalities among its members. *See* Appellant's App. II (App. II) at 448. The faculty discord continued throughout the six years Cole was principal. However, during those years, Cole always received excellent performance evaluations. None of these evaluations suggests that she was at fault for the faculty troubles; nor did her supervisors indicate that Cole would be replaced if a solution to the dissension was not found.

During the 1987–88 school year, the District faced budgetary problems and thus considered the elimination of an administrative position. A proposed budget recommended the elimination of the associate superintendent position. At that time the position was held by Mike Gladden, who had replaced defendant Miller when Miller became superintendent. In February 1988, Miller showed this budget recommendation to Cole and told her that he would "do anything" to save Gladden's job. *Id.* at 452. Later that month, the proposed budget was changed to suggest generally "the elimination of an administrative position," rather than specifically targeting the associate superintendent position. *Id.* On February 26, 1988, Miller told Cole that Gladden would be replacing her as principal. Miller suggested Cole resign in order to return to the classroom, but at that time Cole had no teaching certificate.

On the morning of March 8, 1988, the school board held an unannounced morning

meeting in Miller's office. That night, at the official school board meeting, the board approved a reduction in force. The board voted not to renew Cole's contract and to assign associate superintendent Gladden the additional job of serving as principal of RMS. The board assigned Cole to a teaching position at the elementary school. Cole accepted the position at the elementary school, but resigned midyear to move to Florida.

Cole filed a complaint with the Equal Employment Opportunity Commission (EEOC) on June 13, 1988. In their response to the EEOC, apparently filed by August 25, 1988, the defendants alleged that the reason for Cole's discharge was the faculty problems at RMS, "which [Cole] had been unable to resolve herself over a period of six years, and which in recent years, had begun to affect the quality of education at the Middle School." Appellant's Appendix I (App. I) at 114. There were numerous very favorable evaluations of Cole by defendant Miller for academic years 1984–85, 1985–86, and 1986–87. App. II at 462–71. However, the defendants' response to the EEOC described Cole's performance as "clearly inferior to those of the four other principals in the district...." App. I at 115.

The EEOC made no finding as to the merits of Cole's claims. On September 8, 1989, the EEOC sent Cole a right to sue letter. App. II at 496. She filed this action on December 8, 1989, asserting eleven claims against the school board, the board of education, the superintendent, and five school board members.[1] All but three of Cole's claims were dismissed by the district court.[2] Cole does not challenge their dismissal in this appeal. The School District moved for summary judgment as to the three remaining claims—the Title VII gender discrimination claim, the Title VII retaliation claim, and the Equal Pay Act claim. The district judge granted this summary judgment motion and Cole filed a timely notice of appeal on September 24, 1992 (No. 92–2194).

The School District and the individual defendants filed a cross-appeal from four orders of the district court requiring them to pay certain costs as a condition of obtaining a stay of discovery following their motion for qualified immunity (No. 92–2216).[3] Because a final judgment has been rendered, we may now review these interlocutory orders. *See Hooker v. Continental Life Ins. Co.,* 965 F.2d 903, 905 (10th Cir.1992); *Cotner v. Mason,* 657 F.2d 1390 (10th Cir.1981).

## II

Whether the School District was entitled to summary judgment is a question of law we review de novo. *Durham v. Xerox Corp.,* 18 F.3d 836, 838 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994). Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Lib-*

---

**1.** Cole's original complaint asserted the following causes of action: Title VII Employment Discrimination Based on Sex (Count I); Title VII Retaliation (Count II); Violation of the Equal Pay Act (Count III); Denial of Equal Protection and Violation of 42 U.S.C. § 1983 (Count IV); Denial of Due Process and Violation of 42 U.S.C. § 1983 (Count V); Conspiracy to Interfere with Civil Rights (Count VI); Fraudulent Misrepresentation (Count VII); Defamation (Count VIII); Intentional or Negligent Infliction of Mental and/or Emotional Distress (Count IX); Wrongful Discharge (Count X); and Breach of Contract (Count XI).

**2.** By order of April 9, 1990, the district judge dismissed with prejudice Cole's Count VI and all of her claims, contained in other counts, under the New Mexico Human Rights Act. By memo-

randum opinion and order filed February 8, 1991, and by order filed March 6, 1991, the judge dismissed with prejudice Counts I, II, and III as against the individual defendants but not the School District, as well as Count IV in its entirety and Count V as against the School District and the individual defendants in their official capacities. He also dismissed, without prejudice, Counts VII through XI in their entirety. After interlocutory appeal, Count V as against the individual defendants in their individual capacities was dismissed. *Cole v. Ruidoso Mun. Schs.,* 947 F.2d 903 (10th Cir.1991).

**3.** We held in the first appeal of this case that the individual defendants were entitled to qualified immunity on Cole's due process claim. 947 F.2d at 906.

erty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). In reviewing the record for genuine issues of material fact, we construe the pleadings and documentary evidence liberally in favor of the nonmoving party. *Florum v. Elliott Mfg.*, 867 F.2d 570, 574 (10th Cir.1989).

If the moving party satisfies its initial burden of informing the district court of the basis for its motion, identifying the portions of the pleadings, depositions and the like which it believes demonstrate the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), then the nonmoving party must identify sufficient evidence that would require submission of the case to a jury. *Magnum Foods, Inc. v. Continental Casualty Co.*, 36 F.3d 1491, 1497 (10th Cir.1994).

## A

### The Title VII Gender Discrimination Claim

■ In Title VII disparate treatment claims such as Cole's, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Ramsey v. City and County of Denver*, 907 F.2d 1004, 1007 (10th Cir.1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992). If the plaintiff establishes a prima facie case, the

defendant can rebut the presumption of discrimination by producing some evidence that it had legitimate, nondiscriminatory reasons for its action. *Sorensen v. City of Aurora,* 984 F.2d 349, 352 (10th Cir.1993). If the defendant meets "its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

■ The plaintiff must show by a preponderance of the evidence that the legitimate reasons offered by the defendant were a pretext *for discrimination. EEOC · v. Flasher Co.*, 986 F.2d 1312, 1321 (10th Cir. 1992) ("Even a finding that the reason given for the [adverse employment action] was pretextual, does not compel [a finding of discrimination], unless it is shown to be a pretext *for discrimination against a protected class.*" (Emphasis in original)).

The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination. . . .

*St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749 (emphasis in original). However, the trier of fact is not *required* to make that inference. *Id.* This is so because "the Title VII plaintiff at all times bears the 'ultimate burden of persuasion.' " [4] *Id.*

4. In *St. Mary's,* a correctional officer who had been fired from his job at a halfway house brought suit against his employer alleging that the firing was the result of racial discrimination. After a bench trial, the district court concluded that the plaintiff had proven a prima facie case of race discrimination. *Hicks v. St. Mary's Honor Ctr.,* 756 F.Supp. 1244, 1249 (E.D.Mo.1991). The court then concluded that the defendant met its burden of producing evidence of legitimate, non-discriminatory reasons for Hicks's discharge. *Id.* at 1250. However, the court found the defendant's proffered reasons to be pretextual. *Id.* at 1250–51. The court then noted "[a]lthough plaintiff proved pretext, plaintiff still bears the ultimate burden to prove that race was

the determining factor in defendant's decision." *Id.* at 1251. The court found that plaintiff had failed to prove "that his unfair treatment was motivated by race." *Id.* at 1252. The district court accordingly entered judgment for the defendant.

The Eighth Circuit reversed, concluding that "[o]nce plaintiff proved all of defendants' proffered reasons to be pretextual, plaintiff was entitled to judgment as a matter of law." *Hicks v. St. Mary's Honor Ctr.,* 970 F.2d 487, 492 (8th Cir.1992). The Supreme Court reversed the Eighth Circuit, holding that if the plaintiff proves that the proffered reasons are pretextual, the trier of fact *may* infer intentional discrimination. —— U.S. at ——, 113 S.Ct. at 2749. The

■ As we explain below, we are convinced that there is clearly conflicting evidence in this record showing that genuine questions of fact remain on the material issues whether the School District's proffered reason for its action against Cole was pretextual, and whether disbelief of that reason, together with elements of Cole's prima facie case, show unlawful discrimination against her. Hence, we must reverse the grant of summary judgment against Cole on her Title VII gender discrimination claim.

■ To establish a prima facie case of gender discrimination, Cole must show that: (1) she belonged to the protected class; (2) she was adversely affected by the decision not to renew her contract; (3) she was qualified for the position of principal of RMS; and (4) she was treated less favorably than her male counterparts. *See Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1454 (10th Cir. 1994). *Hickman v. Flood & Peterson Ins., Inc.,* 766 F.2d 422, 424 (10th Cir.1985). The district court determined that Cole established a prima facie case of gender discrimination under Title VII, and therefore the defendants were required to articulate a nondiscriminatory reason for not renewing her contract, Memorandum Opinion and Order at 7–8, and we agree. We consider next whether the evidence in the record raises genuine issues of material fact. This review will determine if Cole has raised genuine issues whether the allegedly nondiscriminatory reason (*i.e.,* Cole's alleged embroilment in a continuing conflict with some faculty, App. I at 90) was a pretext for discrimination. *See St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749 (disbelief of proffered reason, together with elements of prima facie case, may suffice to show intentional discrimination).

First, as Cole has noted, there are glaring contradictions in superintendent Miller's comments on Cole which raise serious doubts about placing blame on Cole for the conflict among the teachers. Miller claimed that the conflict commenced almost immediately after Cole became principal of RMS in the 1982–83

school year, continued until her removal as principal, and was asserted as grounds for her removal in March 1988. Miller Affidavit at 1–3, App. I at 101–103. Stark contradictions are found in Miller's glowing evaluations of Ms. Cole for academic years 1984–85, 1985–86, and 1986–87—years in the middle of the period when Miller asserted that conflict with the teachers was serious and had worsened. *Id.* at 103.

In all these evaluations, Cole received the highest possible marks as to every inquiry on the reports, including whether she *"establishes and maintains, with cooperation of the staff, an environment conducive to learning."* App. II at 463, 468, 471 (evaluations of Ms. Cole for the 1984–85, 1985–86, and 1986–87 school years) (emphasis added). In his evaluation of Ms. Cole for the 1984–85 school year (two years after she became principal), Miller commented:

Texie is fast becoming one of our top administrators. Her ability to grasp the requirements of administration is very good. She has learned in a very short time and under adverse circumstances the competencies required of her to have an excellent school.

*Id.* at 466. In his evaluation of Ms. Cole for school year 1986–87, Miller noted:

Texie seems to get better each year. She continues to address the many problems that are natural to a middle level public school. The problems are addressed but it seems the negative impact on the whole system and on her is less.

*Id.* at 469. In short, superintendent Miller's own contemporaneous evaluations of Ms. Cole raise serious questions of material fact. The trier-of-fact will have a genuine question whether the proffered reason for nonrenewal of Ms. Cole as principal was pretextual.

Second, as Cole notes, the School District changed its explanation for her nonrenewal. Initially, superintendent Miller and school board members said they removed Cole because of budgetary constraints. App. II at 268 and 278 (Affidavits of Ms. Hawthorne

Eighth Circuit had erred in concluding that the finding of pretext compelled judgment for the plaintiff. In *EEOC v. Flasher Co.,* 986 F.2d 1312, 1321 (10th Cir.1992), we came to the opposite

conclusion from the Eighth Circuit, and our position in *Flasher Co.* was subsequently upheld by the Supreme Court in *St. Mary's.*

and Ms. Weems, RMS teachers) and 288 (March 8, 1988, statement of superintendent Miller at close of school board meeting). The District later cited Cole's alleged inability to have a cohesive faculty as the reason for her removal. App. I at 102–104, 194–197, 200–204. Moreover, Ms. Cole's affidavit of November 8, 1990, pointed out that during her six years as principal, Middle School students' test scores rose from the 43rd percentile to the 73rd percentile, evidence which tends to contradict defendants' statements that the quality of education suffered while Ms. Cole was principal. App. II at 454.

 We are convinced that the record reveals a genuine fact question on the material issue whether the District's proffered reason for Cole's nonrenewal was "mere pretext for discrimination." *Daniel v. Loveridge*, 32 F.3d 1472, 1476 n. 2 (10th Cir.1994).[5] There are substantial questions of fact whether disbelief of the proffered reason for Cole's nonrenewal may, together with the elements of Cole's prima facie case, show intentional discrimination against Cole.[6]

### B

### Title VII Retaliation Claim

 The district court correctly utilized the *McDonnell Douglas/Burdine* framework in holding that the School District did not unlawfully retaliate against Cole in violation of Title VII. To establish a prima facie case of retaliation Cole must show that: (1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) she suffered an adverse employment action contemporaneous with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action. *Daniel v. Loveridge*, 32 F.3d at 1475; *Burrus v. United Tel. Co. of Kansas*, 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

 Cole's filing of an EEOC complaint satisfies the first element of a prima facie case. With respect to the second element, Cole makes three allegations of subsequent adverse action against her taken by defendant: First, Cole alleges that Don Weems, principal of the elementary school to which she was reassigned, orally informed her that her teaching would be evaluated three times during the school year, a standard procedure for beginning teachers but not for senior teachers such as Cole. The district court found that this did not reach the level of an adverse employment action, since there was no suggestion that the requirement was ever adopted or carried out. We agree.

 Second, Cole alleges that she was paid less than other teachers of similar qualification, education, and experience. Although the district court found that this was an adverse employment action, it held that the School District adequately explained the payment situation in an affidavit from the District official in charge of payroll computation, which meticulously reviewed the salary formula as applied to Cole and others. We agree that there was not a prima facie showing on this issue.

---

**5.** Implicit in this footnote in *Daniel* is the notion that whether a showing of pretext proves intentional discrimination is a question of fact. *St. Mary's* clearly stands for this proposition.

**6.** In her Response to Defendant's Second Motion for Summary Judgment, Cole identified a pivotal issue in this case: whether necessarily subjective criteria have been applied fairly and uniformly. *See* App. I at 220 (citing *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1018–19 (2d Cir.1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981)). Specifically, was Cole held to a unique standard of performance with respect to faculty cohesiveness, one to which no male administrator was held?

The evidence offered by Cole indicates that she was. Affidavits from teachers at the Middle School indicate that the division among the faculty existed prior to Cole's tenure as principal and that Miller had had problems handling several of the same teachers who created difficulties for Cole. *See, e.g.*, App. I at 270, 279, 286. A showing that the employer's stated reason was not used to reject persons outside the protected group is one way to show pretext. *Grant*, 635 F.2d at 1014–15. We believe Cole has offered evidence which, if believed by a factfinder, would support a conclusion that she was held to a unique standard and thus treated less favorably than male administrators.

Third, Cole asserts that the School District's change in its explanation of the basis for her removal after she filed the EEOC complaint amounted to an adverse employment action. The district court decided that this allegation had been adequately addressed in its discussion of the gender discrimination claim, and since the allegation did not survive the *McDonnell Douglas* test there, it failed in the retaliation claim as well. We cannot affirm the grant of summary judgment on the retaliation claim on this ground because, as noted above, we reverse the district court's grant of summary judgment as to the gender discrimination claim. However, we "may affirm the grant or denial of summary judgment if any proper ground exists to support the lower court's ruling." *Cheyenne–Arapaho Tribes of Oklahoma v. United States*, 966 F.2d 583, 587 (10th Cir. 1992), *cert. denied sub nom. Woods Petroleum Corp. v. Cheyenne–Arapaho Tribes of Oklahoma*, —— U.S. ——, 113 S.Ct. 1642, 123 L.Ed.2d 265 (1993), and *cert. denied sub nom. Cheyenne–Arapaho Tribes of Oklahoma v. Woods Petroleum Corp.*, —— U.S. ——, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993).

Although the School District's change of position regarding the reason for Cole's renewal does tend to show pretext, we do not believe that the change itself constitutes an adverse employment action. The harm to Cole resulted from the nonrenewal and demotion, not from the School District's subsequent explanation of its action. Cole has produced no facts to show that the District's change in position has in any way adversely affected her employment. Therefore, we find that Cole has failed to establish a prima facie case of retaliation. *Cf. Meredith v. Beech Aircraft Corp.*, 18 F.3d 890 (10th Cir.1994) (former employee's performance evaluation, conducted after she filed sex discrimination complaint, was not "adverse action"; former employee failed to establish a prima facie case of retaliation under Title VII because her evaluation marks were satisfactory and she failed to show that they were unfavorable). In sum, the district court properly granted summary judgment for the defendant on Cole's Title VII retaliation claim.

## C

### Equal Pay Act Claim

Cole alleges that she served both as principal and as counselor to students and parents, and that she was paid less than men who performed the same work. The district court, however, held that Cole failed to demonstrate a prima facie violation of the Equal Pay Act.

First, the court found that Cole offered no support for the short discussion of the Equal Pay Act issue contained in her brief in response to the defendant's motion for summary judgment. Conclusory statements are insufficient to defeat a motion for summary judgment. *Nannie and the Newborns*, 3 F.3d at 1418. In addition, the court found that Cole did not dispute the District's assertion that "[a]ll principals [both male and female] at schools which did not have guidance counselors, . . ., provided services which approximated those of guidance counselors even though they were not certified and received no additional compensation." Summary judgment for the defendant on Cole's Equal Pay Act claim was appropriate for the reasons given by the district court.

## III

### The Motion to Disqualify Defense Counsel

Cole also appeals from the district court's order denying her motion to disqualify the law firm of Simons, Cuddy & Friedman (SC & F) as counsel for the defendants.[7] She argues that while principal of

---

7. While this appeal was pending, the defendants filed a motion to strike the issue of disqualification of counsel from this appeal. They assert that we lack appellate jurisdiction of that issue because plaintiff Cole did not designate the specific order denying her motion to disqualify counsel in her notice of appeal. We disagree.

It is true that Fed.R.App.P. 3(c) requires that the notice of appeal "designate the judgment, order or part thereof appealed from," and that this requirement is mandatory. *Cunico v. Pueblo School Dist. No. 60*, 917 F.2d 431, 444 (10th Cir.1990); *Averitt v. Southland Motor Inn of Oklahoma*, 720 F.2d 1178, 1180 (10th Cir.1983).

RMS she consulted with attorneys from SC & F about the dismissal of several District employees, thereby establishing an attorney-client relationship with SC & F and precluding the firm from representing the District in this matter.

The district court reviewed the affidavits submitted by both sides, held a hearing on the motion, and determined that Cole did not demonstrate the existence of an attorney-client relationship between herself and SC & F. Additionally, the court held that even if there were such a relationship, the prior representation was not sufficiently related to the present litigation to require disqualification. We agree.

 It is well-established that ordinarily "the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge," and is thus a matter of judicial discretion. *Redd v. Shell Oil Co.*, 518 F.2d 311, 314 (10th Cir.1975). We will not disturb the trial court's factual findings regarding attorney conduct unless there is no reasonable basis to support those conclusions. *See SLC Ltd. V v. Bradford Group West, Inc.*, 999 F.2d 464, 466 (10th Cir.1993). However, we review de novo the trial court's interpretation of the applicable rules of professional responsibility. *See id.; see also In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir.1992).

 Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to dis-

qualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir.1992), *cert. denied sub nom. Northwest Airlines, Inc. v. American Airlines,* —— U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Therefore, motions to disqualify are governed by the ethical rules announced by the national profession and considered "in light of the public interest and the litigants' rights." *See Dresser*, 972 F.2d at 543.

The District Court of New Mexico has adopted the New Mexico Rules of Professional Conduct. D.Ct.N.M.R. 83.9. New Mexico Rule of Professional Conduct 16–109 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

A. represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

B. use information relating to the representation to the disadvantage of the former client except as Rule 16–106 [governing confidentiality of information] would permit with respect to a client or when the information has become generally known.

N.M.S.Ct.R. 16–109. The New Mexico Rules were patterned after the ABA Model Rules of Professional Conduct—the rules which we believe reflect the national standard to be used in ruling on disqualification motions, and rule 16–109 does not differ from the ABA Rule in any respect material to this

Here, however, the order denying the motion to disqualify counsel was a separate order entered September 2, 1992, which ruled only on that motion. That same day the Memorandum Opinion and Order granting defendants' motion for summary judgment was entered, and the Summary Judgment formally entering that ruling was also filed. The order denying the motion to disqualify defense counsel was not itself appealable. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 370, 101 S.Ct. 669, 671, 66 L.Ed.2d 571 (1981); *cf. Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 440–41, 105 S.Ct. 2757, 2766, 86 L.Ed.2d 340 (1985). However, the notice of appeal from the September 2, 1992, Summary

Judgment, which was a final appealable judgment, did permit the assertion of claims of error in interlocutory orders in the same cause. "[A] notice of appeal that names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3949 at 440 (Supp.1994).

Accordingly, we deny the defendants' motion to strike the disqualification issue from this appeal and address the merits of that issue.

case. *See* ABA Model Rule 1.9(a) & (c). Thus, case law applying ABA Model Rule 1.9 is instructive. .

██ A party seeking to disqualify opposing counsel on the ground of a former representation must establish that:

(1) an actual attorney-client relationship existed between the moving party and the opposing counsel;

(2) the present litigation involves a matter that is "substantially related" to the subject of the movant's prior representation; and

(3) the interests of the opposing counsel's present client are materially adverse to the movant.

*See* ABA Model Rule 1.9(a) & (c); *Koch v. Koch Industries,* 798 F.Supp. 1525, 1532 (D.Kan.1992); *English Feedlot, Inc. v. Norden Laboratories, Inc.,* 833 F.Supp. 1498, 1506 (D.Colo.1993) (setting out elements for disqualification pursuant to Rule 1.9); *Gates Rubber Co. v. Bando Chemical Industries, Ltd.,* 855 F.Supp. 330 (D.Colo.1994). *See also In re American Airlines,* 972 F.2d at 614 (describing elements of Fifth Circuit's test for disqualification).

██ The threshold question for the court is whether there was an attorney-client relationship that would subject a lawyer to the ethical obligation of preserving confidential communications. *See Nelson v. Green Builders, Inc.,* 823 F.Supp. 1439, 1444 (E.D.Wis.1993) (citing *Westinghouse Electric Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311 (7th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978)). For there to have been an attorney-client relationship, the parties need not have executed a formal contract. *Westinghouse,* 580 F.2d at 1317. Nor is the existence of a relationship dependent upon the payment of fees. *Id.* at 1317 n. 6. However, a party must show that (1) it submitted confidential information to a lawyer and (2) it did so with the reasonable belief

that the lawyer was acting as the party's attorney. *Nelson,* 823 F.Supp. at 1445.[8]

Once the existence of an attorney-client relationship has been established, the court must determine whether there is a "substantial relationship" between the present and prior representations. *See, e.g., SLC Ltd. V,* 999 F.2d at 466–67. A substantial relationship exists "if the factual contexts of the two representations are similar or related." *Smith v. Whatcott,* 757 F.2d 1098, 1100 (10th Cir.1985) (quotation omitted). "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Rule 1.9 cmt. The district court found that Cole failed to establish either of these two elements.

██ Cole asserts that an attorney-client relationship existed between SC & F and her because she believed that the law firm represented her individually when she consulted with its attorneys on "sensitive personnel issues" and acted on their advice. Although the alleged former client's subjective belief can be considered by the court, *Dalrymple v. National Bank and Trust Co. of Traverse City,* 615 F.Supp. 979 (W.D.Mich.1985), this belief is not sufficient to establish an attorney-client relationship. *Kubin v. Miller,* 801 F.Supp. 1101, 1115 (S.D.N.Y.1992) (citing *United States v. Keplinger,* 776 F.2d 678, 701 (7th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986)). In addition to having a subjective belief that there was an attorney-client relationship, the belief must have been reasonable. *Nelson,* 823 F.Supp. at 1445.

██ Here there was no reasonable basis for Cole's belief that SC & F represented her individually. Cole ignores the fact that she consulted the law firm only for the purpose of carrying out her duties as princi-

---

8. In order to protect client confidentiality, the party moving for disqualification need not reveal the substance of its communication to the lawyer, for this would defeat the purpose of the disqualification. *See Smith v. Whatcott,* 757 F.2d 1098, 1100 (10th Cir.1985) (discussing the presumption that arises once a "substantial relationship" has been found between the present litiga-

tion and the former matter). Usually, a showing of the circumstances and subject of the consultation will be enough to demonstrate whether the information was confidential. *See, e.g., Westinghouse,* 580 F.2d at 1319 (giving examples of when an implied professional relationship is created).

pal. Rule 1.13 provides that a lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents. Although a lawyer is obligated not to disclose the information revealed by the client's constituents or employees, "[t]his does not mean, . . ., that constituents of an organizational client are the clients of the lawyer." Rule 1.13 cmt. *See also Bieter Co. v. Blomquist,* 132 F.R.D. 220, 224 (D.Minn.1990) (holding that law firm which had formerly represented joint venture was not disqualified from representing opposing party in subsequent suit against two of venture's constituents). The information Cole communicated to the law firm on behalf of the School District was not protectable confidential communications of Cole's to the firm. It is the District which, as the client, holds the right to have those communications protected and which may decide whether and to whom that information may be disclosed. Therefore, it is clear that Cole is not a former client of SC & F and that there is no danger of improper disclosure of client confidences.

Accordingly, the trial court did not abuse its discretion in denying Cole's motion to disqualify.

## IV

### Defendants' Cross–Appeal

#### A

#### The Notice for Cross–Appeal

On October 7, 1992, defendants filed a notice of cross-appeal from district court orders requiring them to pay certain costs as a condition of staying discovery while their motion for summary judgment based on qualified immunity was pending. However, the notice did not specify which particular defendants sought to cross-appeal. The caption in the notice of cross-appeal identified the defendants as "Ruidoso Municipal Schools, et al.," and the body of the notice stated that "defendants hereby cross-appeal." On January 19, 1993, this court ordered the parties to

brief the issue whether we had jurisdiction over all the defendants for purposes of the cross-appeal.

Fed.R.App.P. 3(c) requires that a notice of appeal "specify the party or parties taking the appeal." In *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court held that this is a jurisdictional requirement and that naming only one party and adding "*et al.*" in the notice of appeal without any further specificity is insufficient to identify the appellants. *Id.* at 318, 108 S.Ct. at 2409. However, effective December 1, 1993, Rule 3(c) was amended to prevent appeals from being lost by certain technical defects. *See* Fed.R.App.P. 3(c) advisory committee notes (the new rule was designed "to prevent the loss of a right to appeal through inadvertent omission of a party's name . . . ."). Rule 3(c) now provides that "[a]n appeal will not be dismissed for informality of form or title of the notice of appeal or from failure to name a party whose intent to appeal is otherwise objectively clear from the notice." Fed. R.App.P. 3(c). And the amended rule provides that the requirements of the rule may be met, *inter alia,* by describing "the defendants" in the notice of appeal—precisely the wording of the notice of cross-appeal before us.

 The Supreme Court's order adopting the amended rules provided that the amendments shall take effect on December 1, 1993, and "shall govern all proceedings in appellate cases thereafter commenced and, *insofar as just and practicable, all proceedings in appellate cases then pending.*" 147 F.R.D. 290 (emphasis added).[9] Although the notice of cross-appeal herein was filed in October 1992, prior to the December 1, 1993, effective date of amended Rule 3(c), we are convinced that it is "just and practicable" to apply the amended rule here. The orders which are the subject of the cross-appeal speak in terms such as "that defendants should reimburse plaintiff," Supp.App. at 303,

9. The general rule, of course, is that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or

legislative history to the contrary. *See Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).

so that the issue and parties are clear and no prejudice or injustice will result by treating the notice, filed by counsel who represent all the defendants, as sufficient to support this cross-appeal. This ruling follows our decision in *Dodger's Bar & Grill v. Johnson City Board of County Commissioners*, 32 F.3d 1436, 1440–41 (10th Cir.1994). Concerning application of the rule to suits arising before its effective date, we there held:

> Because "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity," *Landgraf v. USI Film Products*, [—— U.S. ——, ——], 114 S.Ct. 1483, 1502, 128 L.Ed.2d 229 (1994), and the United States Supreme Court order adopting the amendments effective December 1, 1993, instructs us to apply the new rules to all pending appeals "insofar as just and practicable," 61 U.S.L.W. 5365 (U.S. April 27, 1993), we conclude that Rule 3(c) as amended should be applied in this case....

*Id.* at 1440.

Our *Dodger's* opinion was recently followed in *Cleveland v. Porca Co.*, 38 F.3d 289 (7th Cir.1994), and it is in agreement with the Fifth Circuit's holding in *Garcia v. Wash*, 20 F.3d 608, 609 (5th Cir.1994).

We note that in *Regalado v. Commerce City, Colo.*, 20 F.3d 1104 (10th Cir.1994), we applied the *Torres* case and held that only one plaintiff named in the notice of appeal was before this court due to the use of "et al." in the notice of appeal. There, however, we did not discuss or decide whether retroactive application of amended Rule 3(c) would be "just and practicable," and only noted the amended rule in a footnote. *Id.* at 1106 n. 1. We hold that the circumstances here make application of the amended rule "just and practicable," following the Supreme Court's instruction that the amendment "shall govern" in pending cases and those commenced after the amendment was made effective, "insofar as just and practicable." 147 F.R.D. 290.

Accordingly, we hold that the notice of cross-appeal is valid and turn to the merits of that appeal.

## B

## The Merits of the Cross–Appeal

Regarding the merits of the cross-appeal, the defendants argue that they had an absolute right to a stay of discovery following the filing of their motion for qualified immunity and, therefore, the trial court's imposition of any conditions for granting a stay of discovery was improper. We disagree.

 As a general rule, discovery rulings are within the broad discretion of the trial court. *Willner v. Budig*, 848 F.2d 1032, 1035–36 (10th Cir.1988), *cert. denied sub nom. Willner v. University of Kansas*, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989). The trial court's decision on discovery matters "will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).

At a hearing on September 21, 1990, the trial judge ordered that certain depositions be taken on October 8–10, 1990. At no time prior to or during that hearing did counsel for defendants indicate that a motion on qualified immunity was contemplated. *See* Order of February 5, 1991, App. II at 485. On October 3—five days before the court ordered depositions—defendants filed their motion for summary judgment and a related motion for a protective order regarding the scheduled depositions. Their motion for a protective order did not contain a certification, as required by local rule, that counsel for the defendants had conferred in good faith with opposing counsel prior to moving for a protective order.

In order to evaluate the circumstances surrounding the motions, the district judge requested that counsel for the defendants supply information explaining the last-minute filing of the motions regarding qualified immunity. The defendants complied with that requirement, and the district judge subsequently granted their motion for a protective order. However, the judge found that the explanations offered for the late filing were

inadequate,[10] and therefore, as a condition for granting a stay of discovery, the judge required the defendants to pay all out-of-pocket expenses and attorney's fees which Cole had incurred in preparing for the cancelled depositions. *Cole v. Ruidoso Mun. Schs.*, 137 F.R.D. 357 (D.N.M.1991).

 It is of course basic that qualified immunity is an important protection against subjecting government officials "either to the costs of trial or to the burdens of broad-reaching discovery" in cases where the legal norms the officials are alleged to have violated were not clearly established at the time. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982)); *see Workman v. Jordan,* 958 F.2d 332, 335 (10th Cir.1992) (qualified immunity, if successful, protects official both from liability and ordinary burdens of litigation, including far-ranging discovery); *Lewis v. City of Fort Collins,* 903 F.2d 752, 754 (10th Cir.1990) (same). However, when qualified immunity is raised as a defense, there is a narrow right to discovery limited to the issue of qualified immunity. *Maxey v. Fulton,* 890 F.2d 279, 282 (10th Cir.1989). This narrow discovery is allowed to make these determinations:

> If the actions are not those that a reasonable person could have believed were lawful, then discovery may be necessary before a motion for summary judgment on qualified immunity grounds can be resolved. However, any such discovery must be tailored specifically to the immunity question.

*Workman,* 958 F.2d at 336. The plaintiff is required "to demonstrate how discovery will raise a genuine fact issue as to [the defendants'] qualified immunity claim." *Lewis,* 903 F.2d at 758.

 Here we have no showing that there was an abuse of the limitations for discovery on the qualified immunity issue. In fact, qualified immunity was only raised at the last minute. Thus, our question is whether the

trial judge abused his discretion by requiring defendants to reimburse costs and expenses incurred by plaintiff as a result of defendants' untimely actions and their inadequate explanations for them. Just as the trial court's determinations on allowing or denying discovery are discretionary, *see Graham v. Gray,* 827 F.2d 679, 681 (10th Cir.1987), so is the imposition of reasonable conditions on the granting of a stay of discovery. This is also consistent with the trial judge's authority to order the payment of expenses under Rule 37(a) & (b) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 37(a) & (b).

 Here, because the defendants' last-minute filing of their motions on qualified immunity caused the plaintiff to incur unnecessary expenses (including the cost of an unrefundable plane ticket), the trial judge did not abuse his discretion in requiring reimbursement of some of these expenses as a condition of granting the stay of discovery.

## V

Accordingly the summary judgment in favor of the defendant Ruidoso Municipal Schools on Cole's Title VII claim of gender discrimination is **REVERSED** and that claim is **REMANDED** for further proceedings. The summary judgments for defendant on the Equal Pay Act claim and the Title VII retaliation claim are **AFFIRMED.** The district court's denial of Cole's motion to disqualify opposing counsel and its imposition of certain costs as a condition for staying discovery are **AFFIRMED.**

---

10. The only explanation offered by defense counsel for the late filing was that the attorney on the case was not aware of the possibility of obtaining qualified immunity in the midst of discovery until he reviewed *Lewis v. City of Ft. Collins,* 903 F.2d 752 (10th Cir.1990).