81 F.3d 173
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Donna PATRICK, Plaintiff-Appellant,
v.
THE WILLIAMS COMPANIES, INC., a foreign corporation,
Defendant-Appellee.
 No. 94-5166.
 United States Court of Appeals, Tenth Circuit.
 March 28, 1996.
 
 ORDER AND JUDGMENT[1]
 Before PORFILIO, ANDERSON and KELLY, Circuit Judges.
 
 
 1
 This is an appeal from the district court's grant of summary judgment in favor of Defendant-Appellee The Williams Companies, Inc., on Plaintiff-Appellant Donna Patrick's claim of race discrimination under 42 U.S.C.2000e-2 ("Title VII") and 42 U.S.C.1981. We affirm.
 
 Background
 
 2
 Patrick, an African-American woman, worked for The Williams Companies ("TWC") in its Treasury Department from 1977 to 1992, when her position was eliminated and she was terminated. Patrick started as a Cash Forecasting Assistant in 1977, performing loan covenant compliance calculations and preparing consolidated and unconsolidated statements. In 1979, Patrick was promoted to Cash Forecasting Analyst. She retained her loan covenant compliance calculation responsibilities but gained increased responsibility for reports. Her position later changed to Treasury Analyst, Debt Administration, and finally in 1987 to Loan Compliance Coordinator, which she remained until she was terminated. These positions still involved performing loan covenant compliance calculations, but a substantial portion of her time was devoted to "special projects" assigned to her on an ad hoc basis.
 
 
 3
 From 1977 until 1990, Patrick received good performance reviews and steadily increased responsibility. In 1990, she received her first and only poor performance review, a review performed by Patti Kastl, who later initiated the process to terminate Patrick.
 
 
 4
 In late 1991, Kastl determined that Patrick's job duties only amounted to 52% of a full-time position, and a memo was drawn up confirming that the job should be eliminated. Patrick's covenant compliance responsibilities had been sharply reduced because TWC had been upgraded from "below investment grade" to "investment grade," reducing the Company's reliance on non-public financing which requires greater covenant monitoring. Further, TWC had been expanding its in-house legal department to handle loan agreements and covenant monitoring. Kastl acknowledges that Patrick would have been kept as an employee in the Treasury Department and simply given increased duties if her job performance had been better.[2] The decision not to give Patrick more responsibilities made the elimination of her position feasible.
 
 
 5
 Patrick was told on January 8, 1992, that she was being terminated. Kastl and G.L. Best, the Assistant Treasurer, explained that they were eliminating her position and that they were giving the legal department her covenant responsibilities and redistributing her other functions among the people in the department. Best said that they were looking to cut costs in the department. TWC claimed that Patrick's termination was part of a company-wide cut back, but her position was the only one eliminated in the Treasury Department. Patrick was not given the opportunity to transfer within the Company, as was the case with a white employee whose boss did not want her.
 
 
 6
 TWC offered Patrick $15,000 if she would waive her right to sue the Company for discrimination, which she refused, electing instead to sue. TWC moved for summary judgment, and the district court found that while Patrick established a prima facie case of wrongful termination the Company articulated a legitimate, nondiscriminatory reason for the decision. The district court concluded that Patrick failed to demonstrate that a genuine issue of material fact existed that the discharge was racially motivated.
 
 Discussion
 
 7
 We review the district court's grant of summary judgment de novo. Reynolds v. School District No. 1, 69 F.3d 1523, 1531 (10th Cir.1995). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We construe the factual record and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Reynolds, 69 F.3d at 1531. However, once a party shows that it is entitled to summary judgment, the burden falls upon the nonmovant to set forth specific facts demonstrating that there is a genuine issue for trial as to those matters for which she carries the burden of proof. Id.
 
 I. Title VII
 
 8
 Title VII makes it an unlawful employment practice for an employer to "discharge any individual ... because of such individual's race...." 42 U.S.C.2000e-2(a)(1). The plaintiff bears the burden of proving discrimination. A plaintiff can prove discrimination either by direct evidence, or more commonly, by indirect proof under the general framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In an elimination-of-position situation, this framework requires that a plaintiff first establish a prima facie case of employment discrimination by proving that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified and performed satisfactory work; (3) the plaintiff's position was eliminated; and (4) there is evidence giving rise to an inference of discrimination. See Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 799-800 (10th Cir.1993). Viewing the record in the light most favorable to the plaintiff, the district court determined that a prima facie case had been established. We agree.
 
 
 9
 Once a prima facie case has been established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination decision. Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1379 (10th Cir.1994). In this case, TWC explained that Patrick's duties no longer supported a full-time position, primarily due to a reduction in the Company's loan compliance needs which were handled by Patrick.
 
 
 10
 Once the defendant has set forth a facially nondiscriminatory reason for the decision, "the factual inquiry proceeds to a new level of specificity." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981); see Hooks, 997 F.2d at 798. The burden then falls on the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the decision is a pretext for discrimination. Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir.1995). If the plaintiff presents evidence that the defendant's proffered reason for the decision was pretextual, the plaintiff can withstand summary judgment and proceed to trial. Id. The mere establishment of a prima facie case is not enough to withstand summary judgment; "[t]he court must still make a judgment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff.' " MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1121-22 (10th Cir.1991) (quoting Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1570 (7th Cir.1989)).
 
 
 11
 "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer ... or that the employer's proffered explanation is unworthy of credence.' " Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir.1994) (quoting Burdine, 450 U.S. at 256). Patrick does not seriously challenge the credence of TWC's explanation that her duties did not support a full-time position; rather, she claims that racial bias motivated the Company's actions in reducing her duties, leading to the elimination of her position.
 
 
 12
 a. Acts Outside the Limitations Period
 
 
 13
 In attempting to demonstrate pretext, Patrick alleges several discriminatory acts occurring more than 300 days before the filing of her charge with the Oklahoma Human Rights Commission. 42 U.S.C.2000e-5(e)(1) contains a statute of limitations which bars reference to events occurring more than 300 days before the filing of the plaintiff's charge, but the continuing violation doctrine permits the inclusion of such incidents if they are sufficiently related and constitute a continuing pattern of discrimination. Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir.), cert. denied, 115 S.Ct. 107 (1994); Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1414-15 (10th Cir.1993). To invoke the doctrine, a plaintiff must show either (1) a series of related acts against a single individual, at least one of which falls within the limitations period; or (2) a company-wide policy of discrimination both before and during the limitations period. Purrington v. University of Utah, 996 F.2d 1025, 1028 (10th Cir.1993). In determining whether a continuing violation existed, factors to be considered include: (1) subject matter--whether the violations constitute the same type of discrimination; (2) frequency; and (3) permanence--whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences would continue even in the absence of a continuing intent to discriminate. Martin, 3 F.3d at 1415.
 
 
 14
 Patrick alleges several isolated acts which occurred outside the limitations period. First, she contends that she was kept from "visibility" to upper management--that she was not invited to executive meetings on her special projects, unlike other employees, and that projects which might increase her visibility were diverted to others. While we do not doubt the importance of becoming known in the Company, Patrick provides no specific facts in support of her "visibility" claim and cites no particular incidents, relying only on her subjective beliefs. "[A] subjective belief of discrimination no matter how genuine, cannot be the sole basis for a finding of discrimination.' " See Kizer v. Children's Learning Ctr., 962 F.2d 608, 613 (7th Cir.1992) (quoting Andre v. Bendix Corp., 841 F.2d 172, 176 (7th Cir.), cert. denied, 488 U.S. 855 (1988)). Second, Patrick claims, without providing specific details, that she was passed over for promotion to Cash Forecasting Analyst twice in favor of men before finally being offered the position. However, this alleged incident is evidence of sex, not race, discrimination. Third, Patrick points to the 1987 promotion of a white female, Amy Ruf, over her. Best testified that Ruf was the better candidate, and Patrick has not refuted this explanation. Patrick claims that Best told her at the time that the job was "too visible to upper management," that he needed someone who would fit more into the mold, and that he did not want his career "set back" by promoting her. However, these statements do not carry a racial implication in light of Best's explanation that Ruf was the more qualified candidate; Best would reasonably want to avoid promoting a less-qualified candidate to a highly visible position. Fourth, Patrick claims that in 1987 when she was transferred from the finance side of the department to the treasury operations side and given cash management duties, she got the "runaround" from Kastl and Best, specifically, a lack of clarity as to her new cash management assignments. Patrick claims that she unsuccessfully asked for more work on numerous occasions. She believes this treatment was race-based because she never saw white employees treated in a similar fashion. However, the record is devoid of any factual corroboration for this "feeling" of discrimination, and vagueness in work assignments certainly does not amount to race discrimination. Cf. Kizer, 962 F.2d at 613. Fifth, Patrick contends that Debbie Fleming was hired from outside the Company for a supervisory position for which Patrick applied. Patrick claims that Best told her that her qualifications were good and that she might grow into the job, but that he could not take a chance on her at the time, which Patrick interpreted as a race-related explanation. However, this general statement does not indicate racial animus in light of uncontroverted testimony that other candidates were more qualified than Patrick.
 
 
 15
 These alleged incidents do not amount to a series of related acts of purposeful discrimination required to be admissible under the continuing violation doctrine. Purrington, 996 F.2d at 1028. Accordingly, consideration of these incidents occurring beyond the 300 day limitations period is time-barred.
 
 
 16
 Patrick alleges some incidents of discrimination outside of the limitations period directed at others in the Company. These incidents can only be considered under the second prong of the continuing violation doctrine if they constitute evidence of a company-wide policy of discrimination. First, Patrick describes a meeting held in 1987 between TWC's management and minority employees to discuss the need for more blacks in upper management. This meeting is not in any way evidence of discrimination; to the contrary, it appears to be an effort to prevent and rectify discrimination. Second, Patrick alleges that there was a departmental luncheon in 1987 to which everyone in the department except the three black employees was invited. Third, Patrick's African-American co-worker Delores Stephens testified that she felt discriminated against on one occasion when she did not receive a promotion, but there was no factual corroboration of her testimony. Finally, Patrick contends that Best admitted to her in 1989 that there was racism in the department. However, this general statement, again uncorroborated, is far too vague to suggest that racism caused Patrick's termination years later. "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." Cone v. Longmount United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir.1994); see Rea, 29 F.3d at 1457 (statements not connected to the termination decision are insufficient to show pretext). Viewing these purported incidents in totality, they are insufficient to sustain a claim of racial discrimination. See Purrington, 996 F.2d at 1029-30.
 
 
 17
 b. Acts Within the Limitations Period
 
 
 18
 We turn now to the incidents alleged by Patrick which fall within the limitations period. Patrick claims that in late 1991, the Company promoted a secretary to a paraprofessional position to help relieve the workload of one of the professionals in the Treasury Department, but Patrick was not given the opportunity to assume any of that workload though she was capable of doing so. Patrick concludes from this that the Company was trying to "squeeze her out by reshuffling the work." TWC explains that Patrick was asked to do this work in 1990, that she objected to the assignment, and that her work contained numerous errors. Patrick has not rebutted this factual explanation.
 
 
 19
 Patrick contends that towards the end of her employment, she was assigned fewer special projects, and again she concludes that this was part of an attempt to eliminate her. She complained to a co-worker about her lack of work. However, Patrick has presented no evidence whatsoever that her workload was reduced because of her race. The decline in special projects is consistent with TWC's explanation that Patrick's responsibilities no longer supported a full-time position and does not by itself raise a factual issue as to intentional race discrimination. Patrick also alleges that her performance reviews contained inaccuracies, but again, she does not present any evidence that these alleged inaccuracies were premised on racial animus.
 
 
 20
 As to Patrick's discharge itself, she has failed to raise a genuine issue of material fact that the discharge was racially motivated. Patrick concedes that a study of her job revealed that it was no longer a full-time position, but she points to a discrepancy in TWC's statement about the study's timing as evidence of pretext. Patrick claims the study was initiated by her supervisor Kastl and completed in December 1991, as opposed to being conducted in January 1992 pursuant to a Company directive as TWC stated. Assuming this constitutes a factual dispute, it does not amount to a material one. Whether the study was performed in December 1991 or January 1992 is irrelevant to its accuracy and immaterial to Patrick's claim.
 
 
 21
 Although Patrick was the only employee discharged in the Treasury Department, other black employees remained in the department. Patrick was not afforded an opportunity to transfer to another area, and one white employee was, but Patrick has not provided evidence concerning the Company's explanation that her low performance level precluded the possibility of transfer.
 
 
 22
 Patrick notes that at the time of her discharge, the Company offered her $15,000 if she would waive her right to sue for discrimination. Patrick refused and claims the offer constitutes evidence of discrimination. Such an offer is not determinative of the discrimination issue, and indeed, does not necessarily even constitute evidence of discrimination. Absent evidence suggesting that the enhanced severance package is a subterfuge to evade the purposes of Title VII and 1981, an offer, standing alone, is insufficient to constitute evidence of discrimination. Accord Libront v. Columbus McKinnon Corp., 832 F.Supp. 597, 608 (W.D.N.Y.1993) (enhanced severance packages presumed lawful under the ADEA).
 
 
 23
 The testimony of Patrick's coworkers is also insufficient to establish a factual issue. Their generally favorable perception of Patrick does not create a factual issue as to whether her responsibilities were diminished. The fact that Patrick's co-worker Deborah Hart-Seward believed Patrick's termination to be based on race is immaterial because Hart-Seward's testimony was not based upon her personal knowledge of Patrick's performance or circumstances, but rather upon what Patrick told her.
 
 
 24
 Viewing the evidence in the light most favorable to Patrick, we cannot find that she has raised a genuine issue of material fact that her termination was racially motivated or that the reasons proffered by the Company were pretextual.
 
 
 25
 While it is true that credibility issues are generally reserved for the jury, a case is not eligible for a jury's review simply because the plaintiff disbelieves the defendant. See Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir.1988) ("[P]laintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."). In the discrimination context, the plaintiff must provide some basis upon which a jury could infer that the proffered reason is pretext for a racially motivated decision, not simply hope that the jury disbelieves the defendant on the witness stand. Id.
 
 II. Section 1981
 
 26
 In racial discrimination suits, the elements of a plaintiff's case are the same under both Title VII and 1981. Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir.1991). The allocation of burdens under Title VII applies to proving intentional discrimination under 1981 as well. Durham v. Xerox Corp., 18 F.3d 836, 839 (10th Cir.), cert. denied, 115 S.Ct. 80 (1994). While a two-year statute of limitations applies to 1981 actions in Oklahoma, Scheerer v. Rose State College, 950 F.2d 661, 664 (10th Cir.1991), cert. denied, 505 U.S. 1205 (1992), the reasoning above still applies with full force to Patrick's 1981 claim. The extended statute of limitations does not encompass any additional evidence which satisfies Patrick's burden of demonstrating a genuine issue of material fact.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 Despite her poor performance evaluation, Patrick's performance had not reached a low enough level to justify termination for poor performance