**Richard ROTH, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

No. 87 C 7563.

United States District Court, N.D. Illinois, E.D.

Oct. 29, 1987.

Vicki Lafer Abrahamson, Chicago, Ill., for plaintiff.

Jeffrey S. Goldman, Fox and Grove, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendant Continental Casualty Company ("CNA") brings this motion to disqualify plaintiff Richard Roth's attorney Vicki Lafer Abrahamson in this action brought under § 7 of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626 (1982). For the reasons noted below, we deny the motion to disqualify.

### Facts [1]

Abrahamson was employed as an associate by defendant CNA's law firm Fox and

---

**1.** In considering a motion to disqualify an attorney, we are to make a factual reconstruction of

Grove, Chartered, from January 1980 until July 15, 1985. Fox and Grove is a small law firm, currently with twenty-seven lawyers, although during Abrahamson's tenure, it had as many as thirty-five lawyers. Fox and Grove specializes in labor law, in particular, it specializes in defending management in employment discrimination claims. In the present case, plaintiff Richard Roth alleges that because of his age CNA has engaged in intentional wage discrimination by refusing to evaluate his performance, job duties, job content and salary classification, resulting in the underpayment of salary and benefits.

Over an eighteen-month period spanning the years 1983 to 1985, Abrahamson devoted 363.25 hours to two CNA employment discrimination matters. Additionally, at the time of her departure from Fox and Grove in 1985, Abrahamson was the senior litigation associate, and she was consulted on thousands of matters by her colleagues in addition to the two principal CNA matters. Abrahamson does not recall if she was ever consulted on any other CNA matters, but she is sure she was never exposed to any confidential CNA matters. CNA, in turn, does not identify any specific confidential matters. Of the two specific CNA matters Abrahamson worked on, one concerned racial discrimination in employment and the other concerned age discrimination in the termination of an employee.

The first case, *Davis v. CNA*, was before the Illinois Human Rights Commission and involved allegations by the plaintiff that she had been unlawfully terminated because of her prior arrest record. In total, Abrahamson billed 130.25 hours on this matter. Abrahamson assisted lead counsel Goldman in preparing two discovery requests which were submitted to the plaintiff Davis. She assisted in preparing the pre-hearing memorandum which was based solely on discoverable materials. She also helped prepare two or three witnesses and was second chair at the hearing before the Illinois Human Rights Commission. In addition, Abrahamson prepared the post-hear-

ing brief and worked with CNA's in-house paralegal in preparing and answering the discovery. It was CNA's practice at this time, at least with respect to the matters Abrahamson worked on, to have its in-house legal staff review documents for discoverable material and then turn over the discoverable documents and information to outside counsel who would compile the information and submit it to opposing counsel. Abrahamson never took a deposition in the matter nor did she examine any witnesses.

In the other CNA matter Abrahamson worked on, *Hays v. CNA*, she billed CNA 231.50 hours. This case involved the termination of a salesman in one of CNA's southern offices. Abrahamson was one of several Fox and Grove associates to work on this case. In 1984 and 1985, Abrahamson drafted interrogatories, requests for admissions and production requests. She also prepared a memorandum in opposition to a motion for reconsideration on the court's order on a cross-motion for summary judgment, the pretrial order and researched and prepared pretrial briefs such as a motion in limine. She never took a deposition, although several were taken in the case, and she never met the plaintiff, opposing counsel or CNA, except for one occasion when she delivered pleadings to CNA's in-house counsel Patricia Higgens for her review. Ms. Higgens recalls, however, a phone conversation with Abrahamson in 1984 in which they discussed Abrahamson's potential role as trial counsel in the *Hays* case. Apparently no confidential information was exchanged, and Abrahamson was never trial counsel on the *Hays* case and never attended the trial or assisted in the preparation of any post-trial briefs. The only "strategic planning sessions" that she was involved in were with lead counsel, and then they were limited to how certain of plaintiff *Hays'* evidence might be excluded via a motion in limine.

### Disqualification Test

██ Disqualification of an attorney is "a drastic measure which courts should

the scope of the prior legal representation. We have done this by consideration of the affidavits submitted by the parties.

hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Company*, 689 F.2d 715, 721 (7th Cir.1982). On the other hand, a fundamental principle in the lawyer-client relationship is that a lawyer shall maintain the confidentiality of the information relating to the representation, and it is part of this Court's responsibility to safeguard the privacy of the attorney-client relationship. *Id.* The standard for disqualification the Seventh Circuit has indicated we are to use to resolve this issue is the "substantial relationship test." *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir.1983). The question we must answer under this test is "whether it could reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation." *Id.* The Seventh Circuit has structured this test into a three-level inquiry to be undertaken in order to determine if a substantial relationship exists:

> First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*Id.* (citing *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir.1978); *Novo Terapeutisk Laboratorium v. Baxter Travenol Labs, Inc.*, 607 F.2d 186, 195 (7th Cir.1979)). If after evaluating the facts of this case according to this three-part standard, we find that such a substantial relationship exists, we are entitled to presume that the attorney received confidential information during his prior representation. *LaSalle*, 703 F.2d at 256. This presumption, however, is a rebuttable one. *Id.* Thus, if the first three-level inquiry reveals a substantial relationship, we must still proceed to inquire whether the presumption of receipt of confidential information has been adequately rebutted in this case. With these guidelines in mind, we apply them to this case.

We have made a factual reconstruction of the scope of Abrahamson's prior legal representation as set forth above. We observe, however, there is no question that Abrahamson had absolutely no contact whatsoever with the present legal controversy while an associate at Fox and Grove. Thus, this case is similar to *LaSalle National Bank v. County of Lake*, 703 F.2d 252 (7th Cir.1983), where the attorney had no contact with the particular matter at issue but, because he was the principal legal advisor to the opposing party on all civil matters and was the supervisor of the six-attorney office, the court found that the subject matter of the *LaSalle* litigation fell within the scope of his previous representation. The Court's theory was that because of his position, "he was clearly privy to a substantial amount of discussion and strategic thinking about various sewage agreements negotiated and signed by Lake County with various municipalities over a period of time when the validity of such agreements was being challenged." Thus, because the *LaSalle* litigation involved the validity of one of those substantially identical agreements, the court held it was not an abuse of discretion for the lower court to conclude the *LaSalle* litigation fell within the scope of the lawyer's previous representation of the opposing party.

Thus, the question we must determine is whether Abrahamson's participation in the *Hays* and *Davis* lawsuits was of such a quality that she had the opportunity to be privy to legal strategy discussions and access to confidential client information. There is no dispute that, if Abrahamson was lead counsel on the *Hays* case, we could rebuttably presume, and rightly so, that she had access to confidential client information necessitating her disqualification in the present matter. This, of course, is not the case here. Despite her 350 hours of work devoted to CNA matters, there is nothing she did that allowed her access to any privileged communication or the intimate strategy of CNA in employment discrimination cases. In her affidavit, Abra-

hamson explains, without rebuttal from CNA, that all the documents she prepared to turn over to opposing counsel in the *Hays* and *Davis* cases were prescreened by CNA's in-house counsel. Thus, rather than reviewing confidential client documents to determine if they were discoverable, all she did was handle the administration of turning over documents. She never actually talked to CNA; her only direct contact with CNA was through its in-house counsel. CNA claims that we should not "examine the actual scope of Ms. Abrahamson's participation in detail." Instead, this Court must *presume* that, given the extensive number of hours devoted by Ms. Abrahamson to the *Hays* case, "confidences were disclosed to [Ms. Abrahamson] bearing on the subject matter of the representation." We disagree; hours spent on the previous litigation alone cannot determine whether there is a presumption of access to privileged communication. Just as a confidence can be disclosed in as little as 2.25 hours, *see Novo Terapeutisk v. Baxter Travenol,* 607 F.2d 186, 187 (7th Cir.1979), or 11.50 hours, *see Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1265 (7th Cir. 1983), there can be no presumption of access just because an associate bills a large number of hours to a client. If all the associate does is summarize depositions, or catalogue discovery turned over to the opposing party, it can hardly be presumed that the associate had access to confidential client information. When the lawyer's activities are merely on the periphery of a matter handled by their previous law firm, then it is the quality of the activities that must be examined in order to determine whether the lawyer was likely to have access to privileged communication. The test is whether it is reasonable to infer that confidential information would have been given to the attorney. *LaSalle,* 703 F.2d at 255. Abrahamson in her response addressed all of the generalizations CNA made as to her participation in the *Hays* and *Davis* cases. In both cases, she had no access to confidential documents; all discovery she handled was prescreened by CNA in-house counsel, and Abrahamson subsequently turned it over to the opposing

counsel. Even if such discovery were relevant in the current lawsuit, it cannot be characterized as privileged and confidential when it was subsequently turned over to opposing counsel. There is no evidence that Abrahamson ever discussed trial strategy with CNA or even lead counsel. CNA makes a blanket generalization that this occurred, but Abrahamson states that the only "strategy session" she participated in was limited to a discussion of how plaintiff Hays' evidence might be excluded. CNA does not dispute this and does not give any other examples of Abrahamson's alleged participation in strategy sessions.

Even if we did presume that, despite her limited contact with CNA matters, Abrahamson had access to privileged information, that is only a rebuttable presumption. Abrahamson in her affidavit denies any access to privileged and/or confidential matters. In response to this, CNA mentions contacts Abrahamson had with CNA's in-house counsel Patricia Higgens. Ms. Higgens states:

> During the period between October, 1983 and March, 1985, I communicated with Vicki Lafer Abrahamson, then an associate at the law firm of Fox and Grove, Chartered. My conversations with Ms. Abrahamson concerned CNA employment-related matters, including primarily, but not limited to, the age discrimination lawsuit filed against CNA by Earl Hays.

> In addition to general discussions relating to discovery, witnesses, and litigation plans in the *Hays* case, I specifically recall a conversation with Ms. Abrahamson in 1984 in which we discuss her potential role as trial counsel in the *Hays* case.

Not once does Ms. Higgens indicate that the nature of her conversation with Abrahamson involved confidential client matters. After Abrahamson denied the allegation that she had access to privileged information, the burden is on CNA to dispute this. The mere fact that in-house counsel had a conversation with Abrahamson does not indicate that Abrahamson was given confidential communication. Higgens need

not have disclosed the nature of the confidential and privileged information, she need only have informed this Court that it was disclosed. This she fails to do. In summary, we are at a loss to determine the nature and even existence of any disclosure of confidential information to Abrahamson. As long as her participation was on the periphery of the CNA matters she worked on at Fox and Grove and she was not given or even put in a position where she had access to confidential and/or privileged communications, there are no grounds to disqualify Abrahamson as counsel for plaintiff Roth.

In conclusion, because we find that CNA has failed to meet its burden to show that Abrahamson had access to confidential and/or privileged client information in the course of her prior representation of CNA, CNA's motion to disqualify is denied. It is so ordered.