**BARTECH INDUSTRIES, INC., Plaintiff,**

v.

**INTERNATIONAL BAKING CO., INC., Defendant.**

No. 1:95–CV–309.

United States District Court, E.D. Tennessee.

Jan. 8, 1996.

Jes Beard, Sorrick, Guthrie & Guthrie, Chattanooga, TN, for plaintiff.

Bruce C. Bailey, Chambliss & Bahner, Chattanooga, TN, for defendant.

### MEMORANDUM

COLLIER, District Judge.

The Court has before it plaintiff Bartech Industries, Inc.'s motion to disqualify opposing counsel (Court File No. 6), the law firm of Chambliss and Bahner and its attorneys Bruce Bailey and Caldwell Huckabay who represent the defendant, International Baking Company, Inc.

## I. PROCEDURAL HISTORY

This case involves a commercial dispute between Bartech Industries, Inc. (Bartech) and International Baking Company (International Baking) regarding the sale and installation of certain equipment at International Baking Company's location in California. Bartech initially filed this lawsuit in Tennessee in Hamilton County Circuit Court on June 4, 1993. International Baking, through its counsel, Chambliss and Bahner, filed a motion to dismiss that state court action on July 15, 1993. On July 23, 1993, Bartech responded to the motion to dismiss. On July 26, 1993, the circuit court judge dismissed the case. Bartech asked for reconsideration of the dismissal and filed a motion to disqualify counsel on August 3, 1993. On August 23, 1993, the circuit court reinstated the action, but did not rule on the motion to disqualify. Subsequently, on August 17, 1994, the circuit court dismissed the complaint without ruling on the motion to disqualify Chambliss and Bahner.

On August 4, 1995, this action was refiled in the Hamilton County Circuit Court. On September 8, 1995, the defendant removed this action from state court to this Court (Court File No. 1). On November 22, 1995, the defendant filed a motion to dismiss the case or, in the alternative, to transfer the case to California (Court File No. 3). On December 1, 1995, the plaintiff filed the present motion to disqualify Chambliss and Bahner from representing International Baking.

## II. FACTS

The facts in this case are largely undisputed. From the affidavit of Greg Barnes, the chief executive officer and sole owner of Bartech, (Court File No. 6, Motion to Disqualify Opposing Counsel, attachment A, affidavit of Greg Barnes, dated August 2, 1993), and the affidavit of J. Nelson Irvine, partner with the law firm of Chambliss and Bahner, (Court File No. 10, Opposition to the Motion to Disqualify, attachment, affidavit of J. Nelson Irvine, dated December 8, 1995), the following relevant facts are taken.

In December 1992, Greg L. Barnes, the chief executive officer and sole owner of Bartech Industries, Inc., met with J. Nelson Irvine, a partner in the Chambliss and Bahner law firm. The purpose of this meeting was to explore the possible legal representation by Chambliss and Bahner of Greg Barnes. According to the affidavit of J. Nelson Irvine, the purpose of the December 1992 meeting was to discuss three possible areas of legal services: one, general corporate services relating to a legal structure for the manufacturing and distribution of Mr. Barnes' proposed product and related organizational and tax advice; two, a commercial dispute relating to a contract with Pepperidge Farms; and three, planning and legal implementation services for a private offering of equity securities to raise money for future operations. The corporate structure discussion related to the existing corporate shells of three corporations: Bartech Systems, Inc., Bartech Sorts, Inc., and GLB, Inc. According to Mr. Irvine, these were all intact California corporations as he was advised by Mr. Barnes. Mr. Irvine sent a confirmatory letter regarding their meeting on January 8, 1993 to Mr. Barnes. That letter is attached to Mr. Irvine's affidavit. Mr. Irvine states his law firm assisted Mr. Barnes in filing certain corporate information for Bartech Industries, Inc. The letter indicates this work relating to Bartech Industries consisted of a paralegal completing an application for an employer identification number and filing the form with the state. She also completed the annual report to the Secretary of State and filed it. Chambliss and Bahner, according to Mr. Irvine, was not engaged to do that work and never billed Mr. Barnes for the work, nor received any payment for that work. Mr. Irvine indicates in the letter a retainer was requested from Mr. Barnes for representation in the Pepperidge Farms matter. However, neither Mr. Barnes nor any of his corporate entities ever provided the retainer nor paid Chambliss and Bahner to do further work for him or his corporate entities. Mr. Irvine also states that in 1993, Chambliss and Bahner provided Mr. Barnes individually with tax assistance relating to the handling of an income tax refund distribution between Mr. Barnes and his ex-wife, and did receive payment for that work. This was the last work done for Mr. Barnes, according to the Irvine affidavit, and the Chambliss and Bah-

ner firm has not done any additional work for Mr. Barnes, individually or for his corporations. According to Mr. Irvine, he, nor anyone else at Chambliss and Bahner, ever discussed with Mr. Barnes representation in the instant dispute between Bartech, Inc. and International Baking Company, Inc. Mr. Irvine states Chambliss and Bahner was never provided information relating to that dispute. Lastly, he says at no time prior to the initial motion to disqualify being raised did he ever discuss any of this information with the Chambliss and Bahner attorneys representing International Baking Company in this lawsuit, that is, Bruce Bailey or Caldwell Huckabay.

Mr. Barnes' affidavit largely tracks Mr. Irvine's affidavit. His affidavit was prepared in 1993. He stated during calendar year 1993, and prior to the filing of this action, he entered into an agreement with the Chambliss and Bahner law firm to represent him, personally and individually, on certain tax matters. He also stated Chambliss and Bahner was presently under retainer to him personally for such representation. According to Mr. Barnes, in an effort to explain the full nature of his business, he gave a presentation and a slide show on his business wherein he disclosed considerable information regarding Bartech, Inc., including the operation's business plan, photographs of various equipment produced by Bartech, Inc. and his associated companies in the past, structure, operation, finances, general matters regarding pending litigation, and the fact that because of his role in the business operation of Bartech, Inc., and the operation's present financial picture, pursuing litigation in a distant court would be virtually impossible. He also says his disclosures included some general discussion of this case. He says he was not aware Chambliss and Bahner was representing the defendant until it was brought to his attention after the circuit court judge dismissed the complaint in July 1993.

## III. DISCUSSION

### A. Plaintiff's Motion

Plaintiff argues based upon the facts contained in Mr. Barnes' affidavit, the Chambliss and Bahner law firm should be disqualified from representing the defendant. Plaintiff contends the two Chambliss and Bahner attorneys, Bruce Bailey and Caldwell Huckabay, should be disqualified even though plaintiff does not allege these two attorneys were involved in the discussions Mr. Barnes had with the law firm. Plaintiff cites *Manning v. Fort Deposit Bank,* 619 F.Supp. 1327 (W.D.Tenn.1985), and the *Tennessee Code of Professional Responsibility* Canons 4 and 9, and *Disciplinary Rule* 5–105(D). Plaintiff also argues that the dictates of Canon 9, which calls on attorneys to avoid the appearance of impropriety, requires the disqualification of the Chambliss and Bahner law firm.

### B. Defendant's Position

The defendant strongly opposes plaintiff's motion. They argue they have not violated any of the Canons of Ethics. They assert disqualification is a drastic measure which should be imposed only when necessary and cite *Roth v. Continental Casualty Co.,* 676 F.Supp. 816 (N.D.Ill.1987), in support of their position. They also argue the three-part test for disqualification applicable in this circuit, which was most recently discussed in *Dana Corp. v. Blue Cross and Blue Shield,* 900 F.2d 882 (6th Cir.1990), does not require disqualification. Under this test, the movant must show (1) a past attorney-client relationship existed between the parties seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was, or is, substantially related; and (3) the attorney acquired confidential information from the parties seeking disqualification. The defendant does not contest a past attorney-client relationship existed between Mr. Barnes and Chambliss and Bahner. Mr. Irvine's affidavit establishes this fact. There is no conflict between Mr. Barnes' affidavit and Mr. Irvine's on this point. Mr. Barnes said there was an attorney-client relationship relating to tax matters as of August 2, 1993, the date he signed his affidavit. Mr. Irvine says in 1993, Chambliss and Bahner performed certain tax related services. He adds, however, this was the last work done for Mr. Barnes. It is not clear, however, that an attorney-client relationship existed between the plaintiff in this case, Bartech Industries, Inc., and Chambliss

**392**

and Bahner. The defendant argues the second part of the three-prong test for disqualification, *i.e.,* the substantially related prong of the test, is not established.

Motions to disqualify counsel in a lawsuit are very sensitive and require the Court to exercise its judgment with an eye toward upholding the highest ethical standards of the profession, protecting the interest of the litigants in being represented by the attorneys of their choosing, protecting the loyalty and confidences a prior client may have placed in a law firm or an attorney, and the overriding societal interests in the integrity of the judicial process. *Manning v. Waring, Cox, James, Sklar and Allen,* 849 F.2d 222, 224 (6th Cir.1988); *General Mill Supply Co. v. SCA Services, Inc.,* 697 F.2d 704, 711 (6th Cir.1982); *Penn Mut. Life Ins. v. Cleveland Mall Associates,* 841 F.Supp. 815, 819 (E.D.Tenn.1993); *Kitchen v. Aristech Chemical,* 769 F.Supp. 254, 257 (S.D.Ohio 1991); *Baker v. BP America, Inc.,* 768 F.Supp. 208, 213 (N.D.Ohio 1991). As stated by the Fifth Circuit in *In re American Airlines, Inc.,* 972 F.2d 605, 610–12 (5th Cir. 1992), federal courts have a duty and responsibility to supervise the conduct of attorneys who appear before them and to take measures against unethical conduct occurring before them. Courts must also guard against such motions being used to secure a tactical advantage in the proceedings. *Kitchen v. Aristech Chemical,* 769 F.Supp. at 257.

A district court's authority to disqualify attorneys for unethical behavior is derived from two sources. First of all, attorneys are governed by the local rules of the court in which they appear. This district court, by Local Rule 83.6, has adopted the Tennessee Code of Professional Conduct. *Penn Mut. Life Ins. v. Cleveland Mall Associates,* 841 F.Supp. at 817. Second, since motions to disqualify counsel affect substantive rights of the parties, such motions are decided by applying standards developed under federal law. *Cole v. Ruidoso Municipal Schools,* 43 F.3d 1373, 1383 (10th Cir.1994); *Kitchen v. Aristech Chemical,* 769 F.Supp. at 258.

The proper mechanism for bringing alleged unethical conduct to the attention of the court is through a motion to disqualify. Accordingly, plaintiff not only had a right, but a duty to bring this matter to the Court's attention. *Melamed v. ITT Continental Baking Co.,* 592 F.2d 290, 294 (6th Cir.1979); *Kitchen v. Aristech Chemical,* 769 F.Supp. at 257.

In such cases, the movant has the burden of proving that opposing counsel should be disqualified. *A.J. by L.B. v. Kierst,* 56 F.3d 849 (8th Cir.1995); *World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc.,* 866 F.Supp. 1297 (D.Colo.1994); *Contant v. Kawasaki Motors Corp., U.S.A., Inc.,* 826 F.Supp. 427 (M.D.Fla.1993); and *Carlsen v. Thomas,* 159 F.R.D. 661 (E.D.Ky.1994).

A district court's findings of fact regarding the disqualification of counsel are reviewed under a clearly erroneous standard. *Dana Corp. v. Blue Cross and Blue Shield,* 900 F.2d 882, 889 (6th Cir.1990). However, the court's interpretation of the applicable ethical rules and law are reviewed *de novo. General Mill Supply Co. v. SCA Services, Inc.,* 697 F.2d at 711; *In re American Airlines, Inc.,* 972 F.2d 605, 609 (5th Cir.1992).

In ruling on such a motion, the court must satisfy itself that an adequate evidentiary record is developed to allow appellate review. *General Mill Supply Co. v. SCA Services, Inc.,* 697 F.2d at 710. Considering the affidavits filed in connection with this case by Mr. Barnes and Mr. Irvine, and the lack of significant factual disputes, the Court finds an adequate factual basis exists for the Court to decide this matter, and no evidentiary hearing is necessary. The Court does not rely on unsworn statements in briefs or colloquy with counsel.

With the above in mind, we now turn to the test utilized in this circuit as stated in *Dana Corp.* The three-part test requires a movant to demonstrate (1) a past attorney-client relationship existed between the parties seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the parties seeking disqualification. *See also, Harris v. Agrivest*

*Ltd. Partnership II*, 818 F.Supp. 1035, 1041 (E.D.Mich.1993).

 As noted above, there is no dispute that Chambliss and Bahner did have an attorney-client relationship with Barnes. As stated in *Cole v. Ruidoso,*

> The threshold question for the court is whether there was an attorney-client relationship that would subject a lawyer to the ethical obligation of preserving confidential communications ... For there to have been an attorney-client relationship, the parties need not have executed a formal contract ... Nor is the existence of a relationship dependent upon the payment of fees ... However, a party must show that (1) it submitted confidential information to a lawyer and (2) it did so with the reasonable belief that the lawyer was acting as the party's attorney. [Citations omitted].

43 F.3d at 1384.

Based on the facts stated in the two affidavits, there is difficulty with the first prong of the test. Neither affidavit states that an attorney-client relationship existed between Chambliss and Bahner and Bartech. According to Mr. Irvine, Bartech was not even discussed by him and Mr. Barnes. Bartech did not pay a retainer or other fees for any representation. According to Mr. Barnes' affidavit, this dispute with International Baking was discussed in a general manner. This discussion would have occurred well prior to the filing of this lawsuit. There is no indication that confidential information regarding this lawsuit was provided to Chambliss and Bahner. The Court finds it significant also that while Mr. Barnes discussed with Chambliss and Bahner corporate legal issues and the dispute concerning Pepperidge Farms, shortly after conversing with Chambliss and Bahner, Mr. Barnes retained present plaintiff's counsel to represent him in this action. According to Mr. Barnes' affidavit, as of August 1993, shortly after this action was filed by present counsel, he considered that Chambliss and Bahner still were his attorneys on other matters. This certainly permits an inference that Mr. Barnes compartmentalized his legal representation and sought out attorneys for specific needs.

Based on this, there is scant evidence of an attorney-client relationship between Chambliss and Bahner and Bartech.

 Even though there is scant evidence that an attorney-client relationship existed between the corporate plaintiff in this case, Bartech Industries, Inc., and Chambliss and Bahner, the Court will consider the relationship between Chambliss and Bahner and Mr. Barnes to have also encompassed Bartech. The Court will make this assumption for the following reasons. Bartech is wholly-owned by Mr. Barnes. Mr. Irvine indicates the law firm, through one of its paralegals, did prepare certain corporate documents for Bartech Industries, Inc., and filed those documents with the Tennessee Secretary of State. Bartech was operating out of California, as were Mr. Barnes' other corporations, but relocated with Mr. Barnes to Tennessee. Lastly, Mr. Barnes says he mentioned this dispute in general conversation. However, the existence of a prior attorney-client relationship by itself does not mandate disqualification. The movant must also satisfy the second part of the test, that is, the subject matter of the relationship is substantially related. A substantial relationship exists "if the factual context of the two representations are similar or related ... the underlying question is whether the lawyers were so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." [Citations omitted]. *Cole*, 43 F.3d at 1384. Considering the affidavits of Mr. Irvine and Mr. Barnes, the Court does not find that this prong of the test is met. Taking Mr. Barnes' affidavit in the light most favorable to him, the Court will assume that Mr. Barnes raised in a general manner his dispute with International Baking. Since this conversation took place several months before this action was filed, the conversation must have been exploratory and anticipatory in nature. It also must have been quite vague and general since Mr. Irvine contends it was not mentioned at all and Mr. Barnes indicates it was only a general discussion. Mr. Barnes does not assert he imparted confidential information regarding this lawsuit. He asserts Chambliss and Bahner's knowledge of his

financial condition would give them an unfair advantage. However, it is rather obvious that forcing any small business or businessman to litigate far from his home would constitute a hardship. "More general legal representation can be relevant to a later litigation, but only if the later litigation fairly puts in issue the entire background of the movant." *U.S.F.L. v. N.F.L.*, 605 F.Supp. 1448, 1459 (S.D.N.Y.1985).

Squarely facing the relationship between the former representation of Mr. Barnes and/or Bartech and Chambliss and Bahner's present representation of International Baking, the Court concludes they are not substantially related. Those undisputed matters that were the subject matter of the prior representation are not involved in this litigation. The disputed matters, that is, a possible general discussion of this dispute, have not been shown to be substantially related. The Court does not see this litigation as putting "the entire background" of Mr. Barnes or Bartech at issue. Nor is there any assertion before the Court that confidential information was disclosed in that general discussion.

Accordingly, in the absence of an assertion confidential information was disclosed to opposing counsel related to this lawsuit, and in the absence of proof of a substantial relationship between the possible prior representation of Mr. Barnes and/or Bartech by Chambliss and Bahner and this litigation, the Court must DENY plaintiff's motion to disqualify opposing counsel.

An order will issue.

### ORDER

For the reasons stated in the accompanying memorandum, the motion to disqualify opposing counsel (Court File No. 6) filed by plaintiff, Bartech Industries, Inc., is hereby **DENIED.**

**SO ORDERED.**