**Kimberly C. CAVENDER, Plaintiff,**

v.

**US XPRESS ENTERPRISES, INC., Defendant.**

**No. 1:00–CV–336.**

United States District Court, E.D. Tennessee, at Chattanooga.

March 8, 2002.

· Phillip E Fleenor, Jane M Stahl, Shumacker & Thompson, Chattanooga, TN, for Kimberly C Cavender, plaintiff.

Rosemarie L Bryan, Lisa M Pate, Witt, Gaither & Whitaker, P.C., Chattanooga, TN, for U.S. Xpress Enterprises, Inc., defendant.

### *MEMORANDUM*

COLLIER, District Judge.

Before the Court is Kimberly C. Cavender's ("Plaintiff") Motion to Disqualify Defendant's Counsel (Court File No. 16). In

her motion, Plaintiff seeks the disqualification of the law firm of Witt, Gaither & Whitaker ("Witt, Gaither") from acting as Defendant's counsel in this matter. Plaintiff premises her request on the Tennessee Rules of Professional Conduct. US Xpress Enterprises, Inc. ("Defendant") has responded (Court File No. 20) and Plaintiff has submitted a reply (Court File No. 23). Having determined the motion is premature, the Court will **DENY** Plaintiff's motion.

## I. INTRODUCTION

Motions to disqualify counsel are typically among the most sensitive and difficult issues presented to judges. Such motions touch upon the ethical and professional standards of the attorney against whom the claim is made. Such motions impact a client's choice of counsel and risk depriving a client of counsel with whom the client has a lengthy and strong relationship. More importantly, such motions implicate the public's views and judgments regarding the legal profession and the administration of justice as a whole.

The instant motion comes to the Court in a peculiar posture because the determinative factor has not yet occurred. But because this case involves overriding issues of significance, and the progress of this case may well be affected, the Court will set out the logical principles for deciding the merits of the issue at this point.

## II. RELEVANT FACTS

The facts related to the motion to disqualify are undisputed. Plaintiff brought this employment discrimination action against Defendant on October 6, 2000. Plaintiff was represented at the commencement of this suit by the law firm of Shumacker & Thompson. Two attorneys with the firm, Phillip Fleenor and Jane Stahl, handled the litigation. Witt, Gaither represented Defendant. Mr. Fleenor and Ms. Stahl represented Plaintiff through the first ten months of the litigation, filing an amended complaint and a motion to strike.

On August 20, 2001, the Court authorized Shumacker & Thompson to withdraw from representation of Plaintiff (Court File No. 11). The agreed order submitted to the Court stated that a conflict had developed with respect to Plaintiff's representation. The law firm of Spears, Moore, Rebman & Williams then undertook representation of Plaintiff. Subsequent to the withdrawal of Shumacker & Thompson, the Court was informed the reason for the request to withdraw was that Shumacker & Thompson was engaged in merger discussions with Defendant's counsel, Witt, Gaither.

On November 30, 2001, a scheduling conference was held in this case. Defendant's attorneys represented they were still in merger negotiations with Shumacker & Thompson but a merger had not yet taken place, although a merger was likely. Defendant's counsel also represented to the Court Ms. Stahl was no longer working for the law firm of Shumacker & Thompson and would not be a part of the merged firm. Plaintiff's new attorneys were informed if the merger did take place, the merged firm would establish a "Chinese Wall"[1] to insulate Mr. Fleenor from any

---

1. This is a term that has become recognized as signifying procedures to insulate attorneys within a law firm from other attorneys, documents, or other matters in the law firm. Black's Law Dictionary (6th ed.1990), gives this definition:

   A fictional device used as a screening procedure which permits an attorney involved in an earlier adverse role to be screened from other attorneys in the firm so as to prevent disqualification of the entire law firm simply because one member of firm previously represented a client who is now an adversary of the client currently represented by the firm.

involvement in this lawsuit. Defendant's counsel have detailed the steps they have taken and intend to take in the future to ensure Mr. Fleenor will not share any confidences he may have gained from Plaintiff from being communicated to other members of Witt, Gaither. Among the steps are the following:

(1) Mr. Fleenor and any staff involved with this lawsuit would be located in a different building than Witt, Gaither staff involved in this lawsuit;

(2) Removal of all Witt, Gaither file materials related to this action from the general filing system;

(3) Limited places where this lawsuit can be discussed;

(4) Controlling access to material pertaining to the case on the firm's computer network;

(5) Limiting the sharing of secretaries; and

(6) Denying Mr. Fleenor any share in the fee from this lawsuit.

(Court File No. 20, Defendant's Response at 5).

Understandably, Plaintiff indicates she has sincere concerns Mr. Fleenor may impart to members of his new firm confidences she placed in Shumacker & Thompson, if a merger does in fact take place. She has these concerns notwithstanding the efforts Witt, Gaither will undertake to avoid such a consequence.

## III. *DISCUSSION*

■ As alluded to above, motions to disqualify counsel in a lawsuit are very sensitive and require the Court to exercise judgment with an eye toward upholding the highest ethical standards of the profession, protecting the interest of the litigants in being represented by the attorney of their choosing, protecting the loyalty and confidences a prior client may have placed in a law firm or an attorney, and the overriding societal interests in the integrity of the judicial process. *Bartech Industries v. International Baking Co.*, 910 F.Supp. 388, 392 (E.D.Tenn.1996) (citing *Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d 222, 224 (6th Cir. 1988)).

■ A district court's authority to disqualify attorneys for unethical behavior is derived from two sources. First, attorneys are governed by the local rules of the court in which they appear. Local Rule 83.6 of the United States District Court for the Eastern District of Tennessee, provides:

The Code of Professional Conduct[2] adopted by the Supreme Court of Tennessee is hereby adopted as the rules of professional conduct insofar as they relate to matters within the jurisdiction of this court.

E.D. TN. LR 83.6. Thus, attorneys that appear in this Court are governed by the Tennessee Code of Professional Responsibility ("Code"). *See Penn Mut. Life Ins. v. Cleveland Mall Associates*, 841 F.Supp. 815, 817 (E.D.Tenn.1993). Second, since motions to disqualify counsel affect substantive rights of the parties, such motions are decided by applying standards developed under federal law. *Bartech Industries*, 910 F.Supp. at 392.

*Id.* at 240. *See also Clinard v. Blackwood,* 46 S.W.3d 177, 183 (Tenn.2001); *Penn Mut. Life Ins. v. Cleveland Mall Associates,* 841 F.Supp. 815, 816 (E.D.Tenn.1993)

**2.** Since the promulgation of Local Rule 83.6, the Tennessee Supreme Court has adopted the Code of Professional Responsibility. Any reference in this opinion to the Code of Professional Conduct should be understood to apply to the current Code of Professional Responsibility.

## A. Shared Confidences and Appearances

An examination of Plaintiff's motion shows she bases her motion to disqualify on the rules of the Code. She argues that notwithstanding defense counsel's salutary efforts at avoiding an actual conflict of interest should a merger occur, defense counsel still faces an unavoidable violation of the Code. In making her argument, Plaintiff relies upon a recent decision of the Tennessee Supreme Court, *Clinard v. Blackwood,* 46 S.W.3d 177 (Tenn.2001). Defendant also seems to agree this is the relevant authority but in addition cites to *Allied Sound v. Neely,* 58 S.W.3d 119 (Tenn.Ct.App.2001).

As a federal court, the Court is not bound by state court or state attorney disciplinary board interpretations of provisions of the Code of Professional Responsibility. Such interpretations offer helpful guidance to the Court, but because the federal courts routinely handle cases involving parties and attorneys from all over the United States and there is a need for some degree of uniformity, the regulation of the professional conduct of attorneys who appear in federal court is exclusively a province of the federal courts. *Grievance Committee for Southern Dist. of New York v. Simels,* 48 F.3d 640 (2nd Cir.1995).

> [W]ell-established principles of federalism require that federal courts not be bound by either the interpretations of state courts or opinions of various bar association committees ... Although [state] precedents are no doubt helpful, they should be relied upon only to the extent that they are compatible with federal law and policy. Indeed, requiring a federal court to follow the various and often conflicting state court and bar association interpretations of a disciplinary rule, interpretations that may also contravene important federal policy concerns, threatens to balkanize federal

law. If a particular interpretation of a state ethics rule is inconsistent with or antithetical to federal interests, a federal court interpreting that rule must do so in a way that balances the varying federal interests at stake.

*Id.* at 645–46.

Even though the Court is not bound by the Tennessee Supreme Court's decision in *Clinard v. Blackwood,* the Court finds the logic of the opinion instructive and persuasive. In *Clinard,* the Tennessee Supreme Court adopted an earlier opinion of the Tennessee Board of Professional Responsibility that stated adequate screening measures may suffice to rebut the presumption an attorney who had previously represented a client, but then joined a new firm representing a client adverse to the first client, had shared confidences with the new firm. *Clinard,* 46 S.W.3d at 183–84.

Previously, a strict reading of the Code precluded an attorney's new firm from representing a client adverse to the first client. Disciplinary Rule (D.R.) 5–105(D) provides:

> If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary rule no partner, or associate, or any other lawyer affiliated with that lawyer or that lawyer's firm, may accept or continue such employment.

*Id.* Thus, when a lawyer was barred from representing a client because he had previously represented a client with adverse interest to the new client, the whole firm was barred from representation. Courts struggling with this issue uniformly have held the presumption an attorney shares confidences with his new law firm can be rebutted by the erection of a Chinese Wall. *Penn Mut. Life Ins.,* 841 F.Supp. at 817. The *Clinard* court adopted the reasoning of these courts and held adequate screen-

ing measures may suffice to rebut the presumption of shared confidences and satisfy the demands of D.R. 5–105(D). *Clinard,* 46 S.W.3d at 183–184.

In *Clinard* an attorney represented one party at the beginning of a legal action and during the course of the litigation withdrew and joined the opposing attorney's law firm. Applying the Chinese Wall theory, the court held the opposing attorney's firm had implemented sufficient screening procedures to rebut the presumption of shared confidences to avoid disqualification. *Id.* at 185–86.

█ In this case the measures defense counsel indicate they will take compare favorably to those found sufficient in *Clinard.* Defendant's counsel offers a fairly persuasive argument the Chinese Wall they have constructed would suffice to satisfy the requirements of DR 5–105(D).

Nevertheless, after determining the Chinese Wall erected in *Clinard* was sufficient to rebut the presumption of shared confidences, the Tennessee Supreme Court went on to consider additional ethical rules implicated by the facts. Ethical Consideration 9–6 of Canon 9 of the Code states:

> Every lawyer owes a solemn duty to uphold the integrity and honor of the profession; to encourage respect for the law and for the courts and the judges thereof; ... to act at all times so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety.

*See also* Tenn.Code of Prof'l Resp., Canon 9, D.R. 9–101.

Disagreeing with the criticism the appearance of impropriety standard is "too slender a reed on which to rest a disqualification order," *Penn Mut. Life Ins.,* 841 F.Supp. at 818, (quoting *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d

715, 723 (7th Cir.1982)), the Tennessee Supreme Court relied upon D.R. 9–101, in deciding to apply the appearance of impropriety standard to the facts of the case.

The Tennessee Supreme Court identified the factors that should be considered in assessing the appearance of impropriety standard.

> First, the mere possibility of impropriety is insufficient to warrant disqualification.
>
> Second, the standard is objective. Avoidance of the appearance of impropriety is intended to promote public confidence in the legal system.
>
> Third, ... [t]he existence of an appearance of impropriety should therefore be determined from the perspective of a reasonable layperson.
>
> Fourth, that layperson is deemed to have been informed of all of the facts, including whether and to what extent screening procedures were employed.

*Clinard,* 46 S.W.3d at 187 (citations omitted).

Under this analysis, then, the establishment of a Chinese Wall is not a complete defense to disqualification but merely a relevant consideration to be taken into account under the fourth factor. After considering these factors including the Chinese Wall, the Tennessee Supreme Court stated joining the opposition's law firm in the middle of a case would appear to the common man as if the attorney "has not only switched teams, [but] has switched teams in the middle of the game after learning the signals." *Id.* at 188. The appearance of impropriety was too strong in this instance to allow the law firm to continue to represent a party in the litigation. *Id.* at 188–89.

In *Penn Mut. Life Ins.* 841 F.Supp. at 817, Chief Judge R. Allan Edgar held the same ("For all practical purposes, the law-

yers have switched sides. Clients must feel free to share confidences with their lawyers. This will not occur if we permit lawyers to be today's confidants and to-morrow's adversaries.").

Based upon the reasoning expressed in *Clinard* and *Penn Mut. Life Ins.*, the Court holds that in situations similar to those in these two cases disqualification is required.

Plaintiff argues Defendant's counsel has engaged in substantially the same practice the Tennessee Supreme Court determined required disqualification. Mr. Fleenor represented Plaintiff at the beginning of this lawsuit and now is joining sides with Defendant's counsel. Plaintiff argues no amount of screening could prevent the "appearance of impropriety" in such a situation. She further argues if the merger takes place close to the proximity of the November trial date, the trial will be delayed, a disservice both to judicial economy and to Plaintiff.

While Plaintiff very well may be correct that there are compelling similarities if the merger were to occur, in fact at this time the merger has not occurred. In *Clinard* the attorney had actually joined the opposition. In the present case Mr. Fleenor has not yet joined the defense counsel's firm. He has not yet "switched teams." While the possibility of a merger still exists and may in fact be likely, the appearance of impropriety has not yet attached.

For this reason, the Court is unable to conclude at this time there is an appearance of impropriety for which disqualification is warranted.

### B. Ripeness of the Issue

Plaintiff also expresses concern that if a merger does occur, it will delay the trial in this case. That is certainly a possibility. Yet, at this point it is only a possibility. The Court cannot predict whether the merger will in fact occur, and if it does, when it will occur. While the Court is sympathetic to Plaintiff's plight that is an insufficient reason for the Court to act at this time. However, the Court assumes if it became necessary to disqualify defense counsel prior to trial, both parties would suffer hardship and it would be in the interest of the parties and the management of this case should a change of counsel be necessary, that change would be better made sooner rather than later.

### IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiff's Motion to Disqualify Defendant's Counsel (Court File No. 16).

### *ORDER*

In accordance with the accompanying Memorandum, the Court **DENIES** Plaintiff's Motion to Disqualify Defendant's Counsel (Court File No. 16).

**SO ORDERED.**